Michael P. Sand
Sand Law Office
1700 West Koch, Suite 5
Bozeman, Montana 59715
(406) 587-2995
mike@sandlawoffice.com
Attorney for Plaintiff

**FILED**
NOV 1 6 2017
Clerk, U.S District Court
District Of Montana
Great Falls

## MONTANA EIGHTH JUDICIAL DISTRICT COURT
## CASCADE COUNTY

CV-17-125-GF-BMM

| | |
|---|---|
| JOSHUA F. COTTON, | Case No. CDV-17-0665 |
| Plaintiff, | Judge: JOHN A. KUTZMAN |
| v. | **COMPLAINT AND JURY DEMAND** |
| BNSF RAILWAY COMPANY, a corporation, | |
| Defendant. | |

COMES NOW, the Plaintiff, Joshua Cotton, by and through the undersigned counsel, complaining of the acts of Defendant BNSF Railway Company alleges and states as follows:

### NATURE OF THE ACTION

1. This is an action brought by Plaintiff Joshua Cotton ("Cotton") for monetary damages and other relief from Defendant BNSF Railway Company ("BNSF") for negligent mismanagement pursuant to Mont. Code. Ann. § 39-2-703.

2. As stated herein, after more than twenty (20) years of service for BNSF, Cotton was unlawfully terminated from its employ due, in whole or in part, to the conduct and actions of other BNSF employees. BNSF through its management, agents, and/or employees negligently

-1-

and/or willfully disregarded relevant knowledge concerning the conduct of other employees and set out to terminate Cotton for the actions or inactions of others. Accordingly, Cotton is entitled to all available relief including, but not limited to, an award of monetary damages, equitable relief in the form of reinstatement with seniority, and exemplary relief in the form of punitive damages.

## PARTIES

3.  Plaintiff Joshua Cotton is, and at all relevant times has been, a citizen and resident of Great Falls, Montana. Cotton is a former employee of BNSF who, at all material times, provided services to the company in the state of Montana.

4.  Defendant BNSF Railway Company is a corporation duly organized, and existing under and, by virtue of, the laws of Delaware with its corporate headquarters located in Fort Worth, Texas. BNSF is a rail carrier engaged in interstate commerce that operates in twenty-eight (28) and employs more than 40,000 people nationwide. At all times material to the allegations stated herein, BNSF owned and/or maintained rail lines and conducted business within the state of Montana.

## FACTUAL ALLEGATIONS

5.  Cotton first began working for BNSF in 1994 at the age of 19 in the track department and for more than twenty (20) years remained employed by BNSF in good standing.

6.  On or about October 9, 2015 Cotton was assigned to work as a Laborer Hostler along with co-worker, Joe Copenhaver ("Copenhaver"), at the BNSF roundhouse in Great Falls, Montana.

7. Both Cotton and Copenhaver were responsible for working the day shift and, on October 9, 2015, no foreman or management level employee was present to supervise their work or manage their job duties.

8. During their shift, Cotton noticed that a convex mirror in the hallway of the roundhouse office had been moved and readjusted it to provide an adequate view of the hallway.

9. Upon conclusion of their shift, Copenhaver gave the "turnover" to the next shift, meaning that he advised them of the present situation and relinquished command accordingly.

10. Upon information and belief, after Cotton and Copenhaver left the property after their shift, BNSF general foreman Robert A. Tucker ("Tucker") was contacted by a member of the subsequent (second) shift regarding allegations that the hallway mirror had been moved as well as purported issues with the protective status of the track and locomotives upon turnover.

11. Upon information and belief, Tucker was notified that the "turnover map" provided by Copenhaver to the next shift indicated that two "locomotives" were ready to be moved but were still under "blue flag" protection. In the railroad industry, a blue signal or flag signifies that workers may be on, under, or between rolling equipment and thus, the locomotive or train car may not be moved until the blue flag has been removed.

12. After speaking with the BNSF employees on the second shift, Tucker returned the following day, on or about October 10, 2015, to speak with Cotton and Copenhaver about the allegations regarding the mirror and the blue flags left on the locomotives following their shift.

13. Upon being questioned by Tucker, Cotton admitted to having adjusted the mirror after noticing that it had been moved to a position that he felt was more useful. Neither Cotton nor Copenhaver could recall whether all the flags were removed at the conclusion of their shift.

14. During his conversation with Cotton, Tucker also inquired about an article Cotton had posted on his locker concerning narcissism and narcissistic behavior. Tucker accused Cotton of posting the article as an attempt to harass second shift employees. While Cotton stated that it was not his intention to harass any other employee, he nevertheless notified Tucker that he would remove the article without being asked to do so.

15. Two days later, in a letter dated October 12, 2015, BNSF Administration Director Rick Stauffer ("Stauffer") notified Cotton that he was being held out of service pending the completion of a disciplinary investigation "for the purposes of ascertaining the facts and determining [Cotton's] responsibility" for his alleged violation of several company rules. The alleged rule violations articulated in Stauffer's letter included: horseplay for moving the mirror; dishonesty about moving the mirror; the failure to remove blue signal protection; dishonesty during turnover about the blue signal being removed; and harassing co-workers by posting articles about narcissistic behavior on his locker.

16. Despite the fact that Copenhaver was responsible for having given the turnover to the second shift and the notification that blue signal protection had been removed, he was not charged with, or investigated for, any perceived rule violation.

17. In fact, neither Cotton nor Copenhaver were individually responsible for completing the turnover or ensuring that blue signal protection had been removed prior to the end of their shift.

18. On or about October 19, 2015 BNSF management held a formal disciplinary hearing at conference room in the Best Western Heritage Inn in Great Falls, Montana to present evidence and testimony against Cotton for his alleged violation of company rules.

19. During the disciplinary hearing, Tucker served as both the charging officer as well as the carrier's primary witness. Testimony was also elicited from Copenhaver as well as a BNSF foreman and other employees working on the second shift.

20. BNSF second shift employee Shane Bundtrock ("Bundtrock") testified that when he noticed the hallway mirror had been moved, he repositioned it and then the mirror was photographed as evidence of Cotton's alleged misdoings. Bundtrock also testified that Cotton, not Copenhaver, had given the turnover to the second shift on October 9, 2015.

21. Notably, during the hearing, Tucker testified that it is not a big deal for another employee of the same craft to remove blue signal protection previously left in place. Tucker also admitted that there was no foreman or other management on duty during Cotton and Copenhaver's shift on October 9, 2015.

22. Moreover, Tucker also provided false and misleading testimony at the disciplinary hearing that Cotton had given false statements about moving the mirror. Tucker had, in his possession, relevant knowledge that Copenhaver rather than Cotton had given the turnover and notified the second shift that the blue flag protection had been removed but withheld his knowledge of such exculpatory information from the disciplinary proceeding.

23. Relatedly, second shift employee Douglas Evenhus ("Evenhus") testified during the hearing that either Cotton or Copenhaver could have been responsible for removing the blue signal protection but that Copenhaver had given the turnover on the day in question.

24. Both Evenhus and Bundtrock both generally agree that the only issue related to the failure of a shift to remove blue signal protection is a potential delay in requiring the following shift to remove it.

25. Following the disciplinary hearing, in a letter dated November 2, 2015, BNSF General Foreman Victor Ahlf notified Cotton that he had been found to have violated Mechanical Safety Rules 28.6 "Conduct" and 24.2 "Blue Signal Protection of Workmen" and was therefore dismissed from service effective immediately. No further details were provided in the letter as to how these rules were purportedly violated or why termination was warranted.

26. Despite the fact that BNSF was in possession of relevant knowledge concerning the responsibility of other employees, namely Copenhaver, surrounding the blue flag protection, it neither investigated nor charged any other employee with a rule violation related thereto.

27. Relatedly, despite BNSF's knowledge that an employee on the second shift had also moved the hallway mirror, it neither investigated nor charged any other employee with any related rule violation.

## CAUSE OF ACTION
### (Violation of Mont. Code Ann. § 39-2-703)

28. Plaintiff hereby incorporates by reference paragraphs 1- 29 as if fully set forth herein and further alleges:

29. As stated hereinabove, the alleged facts make out a case for negligent mismanagement under Mont. Code. Ann. § 39-2-703.

30. Mont. Code. Ann. § 39-2-703 provides that a railroad in the state of Montana is liable for all damages suffered by an employee in consequence of the neglect, mismanagement, or willful wrongs, whether of omission or commission, when the acts are connected in any way to the use and operation of said railroad.

31. BNSF violated Mont. Code. Ann. § 39-2-703 by, among other things, its conduct as described hereinabove including, but not limited to:

A. Negligently and/or willfully mismanaging its railroad operations resulting in Plaintiff's improper and unlawful discharge described herein;

B. Failing and refusing to consider and/or investigate other employees as potentially responsible for the rule violations of which Plaintiff was charged;

C. Failing and/or refusing to adequately manage and supervise Plaintiff and his co-workers;

D. Negligently and/or willfully mismanaging its employees by failing to make any one individual responsible for turning over the job site or certifying the removal of blue signal protection.

E. Negligently and/or willfully mismanaging its employees, including but not limited to, its foreman Robert Tucker;

F. Negligently and/or willfully permitting Tucker and/or its employees to knowingly disregard relevant knowledge as to Plaintiff's alleged responsibility for rule violations and providing false and misleading testimony related thereto; and

G. Negligently and/or willfully mismanaging Plaintiff's disciplinary assessment and termination.

32. The actions of BNSF described above were done with malice, in that BNSF had knowledge of facts or intentionally disregarded facts which created a high probability of injury to Plaintiff and deliberately proceeded to act in a conscious or intentional disregard of the high probability of injury to Plaintiff or deliberately proceeded to action with indifference to the high probability of injury to the Plaintiff.

33. As a direct and proximate result of BNSF's negligent and/or willful mismanagement of its employees and railroad operations, Plaintiff has suffered damages.

WHEREFORE, Plaintiff respectfully prays the Court for the following relief:

1. A trial by jury on all issues;

2. Entry of judgment against Defendant for an award of all lost wages and benefits from the date of the illegal acts with interest as allowed by law

3. Entry of judgment against Defendant for an award of compensatory and general damages, including emotional distress, in an amount to be proven at trial, plus as allowed by law;

4. Entry of judgment against Defendant for an award of punitive damages in an amount sufficient to punish Defendant and deter such similar conduct in the future;

5. The costs of this action be taxed against Defendant; and

6. Any such other and further relief as this Court may deem just and proper.

Respectfully submitted this 11th day of October 2017.

_____
Michael P. Sand
*Attorney for the Plaintiff*